UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **UNITED STATES *ex rel.* MELLISSA STAGGERS and RHONDA KURDELMEYER,**<br><br>Plaintiffs-Relators,<br><br>v.<br><br>**MEDTRONIC, INC.,**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 15-cv-392 (TSC/GMH)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

In this *qui tam* action against Defendant Medtronic, Inc. ("Defendant" or "Medtronic") under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, Plaintiffs-Relators Melissa Staggers and Rhonda Kurdelmeyer ("Relators") have filed a motion seeking to modify an order—proposed by both parties and entered (with minor modifications) by the Court—bifurcating discovery in this case into phases: a geographically limited Phase 1 after which, if Relators could establish the merits of their claims by surviving a motion for summary judgment, the case would progress to nationwide discovery in Phase 2. Specifically, Relators seek to unravel that agreed-upon process, dodge formal summary judgment briefing, and skip to nationwide discovery. Because Relators fail to show good cause for the modification, the motion is denied.[1]

---

[1] The docket entries most relevant to this Memorandum Opinion and Order are: (1) the Order imposing a phased discovery plan (the "Phased Discovery Order"), ECF No. 94; (2) the Scheduling Order with Respect to Phase 1 (the "Phase 1 Scheduling Order"), ECF No. 128; (3) Plaintiff-Relators' Motion to Proceed to Full Nationwide Discovery (the "Motion for Nationwide Discovery"), ECF Nos. 150 & 151 through 151-316; (4) Defendant's Opposition to the Motion for Nationwide Discovery, ECF Nos. 174-2 through 174-39; and (5) Relators' Reply, ECF Nos. 178-2 through 178-46. Page numbers cited herein are those assigned by the Court's CM/ECF system.

I.  BACKGROUND

Relators are two former sales representatives who marketed and sold Defendant's product InterStim—a surgically implantable device that stimulates the sacral nerve for the treatment of incontinence.  *See* ECF No. 18, ¶¶ 8–9, 23–24; ECF No. 174-2 at 10.  In this action, they allege that Medtronic "engaged in fraudulent conduct, resulting in the submission of false Medicare claims by physicians in connection with . . . InterStim."[2]  *United States ex rel. Staggers v. Medtronic, Inc.*, No. 15-cv-392, 2019 WL 13132849, at *1 (D.D.C. Mar. 25, 2019).  As described by Judge Chutkan in her opinion granting in part and denying in part Medtronic's motion to dismiss, the "theory of liability" remaining in this case

> essentially alleges that Medtronic purposefully causes treating physicians to submit Medicare claims for InterStim implantation, which falsely certify that the implantation is documented as medically necessary in accordance with Medicare regulations.  The pertinent regulation provides:
>
>> [b]efore a patient is eligible for permanent implantation, he/she must demonstrate a 50% or greater improvement through test stimulation.  Improvement is measured through voiding diaries.  Patient must be able to demonstrate adequate ability to record voiding diary data such that clinical results of the implant procedure can be properly evaluated.
>
> As this regulation makes clear, medical necessity must be demonstrated on the basis of "voiding diaries."  Nonetheless, Relators' First Amended Complaint alleges in comprehensive particularity how Medtronic has thoroughly insinuated itself into the doctor-patient relationship, so that doctors delegate to Medtronic representatives the responsibility for assessing symptom improvement during the testing period even though Medtronic's assessments are not based on the examination of patients' diaries, as the regulation requires.

*Id.* at *2 (internal citation omitted) (quoting The National Coverage Determination for Sacral Nerve Stimulation for Urinary Incontinence (Publication No. 100-3, Manual Section No. 230.18, Version 1, Effective Date Jan. 1, 2002 ("NCD 230.18")).  Soon after Judge Chutkan ruled on

---

[2] The United States declined to intervene and "take over the action" pursuant to 31 U.S.C. § 3730(b)(4)(B).  *See* ECF No. 6.  Therefore, it is being conducted by Relators.

Defendant's motion to dismiss, she referred the action to a magistrate judge for resolution of discovery disputes and Magistrate Judge Meriweather was assigned to the case. Minute Order (May 3, 2019); Docket Entry Referring Case (May 3, 2019).

Defendant filed a motion to limit discovery, which was opposed by Relators, *see* ECF Nos. 45, 49, 67, 68; then, in compliance with a request from Judge Meriweather, Relators filed a plan for phased discovery, which Defendant opposed, *see* ECF Nos. 81, 83, 90. Before those disputes were resolved, the parties filed a joint motion seeking entry of an agreed-upon Phased Discovery Order. *See* ECF No. 93. Judge Chutkan issued an order imposing that plan (with two minor modifications noted below). *See* ECF Nos. 93, 94, 94-1.

The Phased Discovery Order includes seven "Steps": (Step 1) Patient Selection for Phase 1 Discovery, (Step 2) Phase 1 Discovery, (Step 3) Meet and Confer, (Step 4) Motion for Summary Judgment on Liability and Scope, (Step 5) Response to Summary Judgment Decision, (Step 6) Phase 2 Discovery, and (Step 7) Subsequent Proceedings. Phase 1 discovery focuses on "Medicare claims submitted by the physicians whose practice the Relators supported during their tenure as Medtronic sales representatives." ECF No. 94-1 at 2. Step 1 was designed to randomly identify 100 patients of those physicians for whom a Medicare claim was submitted relating to a new InterStim implant. *See id.* at 2–3. Step 2 allowed discovery related to those 100 patients, "their physicians, the physicians' medical staff, and current and former Medtronic employees and consultants concerning claims submitted to Medicare involving Medtronic's InterStim device for the selected patients." *Id.* at 3. In addition, Step 2 allowed discovery regarding Medtronic's relevant "policies, procedures, sales training, marketing, physician education materials, and patient education materials"; materials distributed to Relators or offered at meetings to which Relators were invited "pertaining to submission of claims to Medicare"; relevant conduct of Medtronic

3

supervisory or management personnel; and "third-party discovery concerning the interpretation or enforcement of [NCD 230.18] and applicable statutes, regulations, and rulings (if any) related to medical necessity and documentation requirements." *Id.* at 3–4. Step 3 outlined a process to raise specific discovery disputes with the Court.[3] *See* ECF No. 94 at 1–2; ECF No. 94-1 at 4.

Steps 4 and 5 are particularly relevant here and are therefore set out in their entirety:

**Step 4: Motions for Summary Judgment on Liability and Scope**

Upon completion of Phase 1 Discovery, the Parties may file motions or cross-motions, including for summary judgment with respect to the following:

a. Issues of law, including interpretation of the National Coverage Decision and applicable statutes, regulations, and rulings related to medical necessity and documentation requirements;

b. Whether a fact issue exists as to Medtronic's liability in connection with the Medicare claims submitted by one or more of the physicians for the patients who were subject to Phase 1 Discovery. The motions may address any or all of the elements of liability, including the questions of whether the physicians submitted false claims within the meaning of the False Claims Act, whether Medtronic caused any such false claims to be submitted, intent, and materiality; and

c. The extent to which the Court determines the record developed in Phase 1 Discovery supports possible further discovery regarding patients who are not within the scope of Phase 1.[4]

**Step 5: Response to Summary Judgment Decision.**

What further discovery, if any, will be permitted will depend on the Court's disposition of the Parties' motions or cross-motions as follows:

a. If the Court finds that the Relators have failed to establish any genuine issue of fact as to Medtronic's liability for causing any of the physicians subject

---

[3] Judge Chutkan added a provision explicitly directing the parties to confer in good faith to resolve any discovery dispute; requiring any unresolved discovery dispute to first be presented informally to Judge Meriweather via a joint email, after which a telephone conference would be held; prohibiting any discovery motion from being filed without a prior telephone conference; and warning that the party who does not prevail on a discovery dispute may be ordered to pay the costs involved, including reasonable attorney's fees. *See* ECF No. 94 at 1–2.

[4] Judge Chutkan added a sentence to Step 4 allowing the parties, upon completion of Phase 1 Discovery, to propose a briefing schedule for the summary judgment motions that "avoids simultaneous filing of cross-motions." ECF No. 94 at 2.

           to Phase 1 Discovery to submit false claims for the identified patients to Medicare, Medtronic's motion should be granted and judgment entered in Medtronic's favor.

    b.    If the Court denies Medtronic's motion as to claims submitted to Medicare for the patients subject to Phase 1 Discovery, but finds insufficient evidence in the record to support discovery related to patients outside the scope of Phase I, then the Court will schedule the Phase I claims for trial and enter judgment in Medtronic's favor as to any claims for patients outside the scope of Phase I.

    c.    If the Court denies Medtronic's motion as to claims submitted to Medicare for the patients subject to Phase I Discovery and also finds sufficient evidence in the record to support further discovery related to claims for patients outside the scope of Phase I, then the Court will determine the scope of such additional claims and order Phase 2 Discovery as appropriate to assess them.

ECF No. 94-1 at 4–5.

Step 6 provides that, if the Court concludes in its summary judgment decision that "further discovery is appropriate as to patients outside the scope of Phase 1 Discovery," the parties should file a report "outlining their proposals for Phase 2 discovery consistent with the Court's decision." ECF No. 94-1 at 5. Step 7 provides that, following Phase 2 Discovery, if any, "the Court will entertain further motions for summary judgment, or, if no such motions are filed, schedule the matter for trial." *Id.* at 6. The plan further allows the parties "to seek a change in the plan by further agreement or by Court Order for good cause shown." *Id.* at 1.

On August 4, 2023, Judge Meriweather entered an order setting the schedule for Phase 1 discovery (the "Phase 1 Scheduling Order"). *See* ECF No. 128. That order, among other things, set January 22, 2024, as the deadline for production of Phase 1 documents; set June 7, 2024, as the deadline for completion of Phase 1 fact discovery; and required initial expert disclosures to be served by July 15, 2024, with rebuttal disclosures to be served by September 13, 2024, and expert depositions completed by November 1, 2024. *See id.* at 1–3. In addition, the order required the

5

parties to "meet and confer to propose a schedule for summary judgment briefing and post-Phase 1 motions," including motions objecting to "expert testimony pursuant to the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)." ECF No. 128 at 4. At the request of the parties (or with their consent) certain deadlines in the Phase 1 Scheduling Order have been extended. *See, e.g.*, Minute Order (Feb. 6, 2024); ECF Nos. 159, 160; Minute Order (July 9, 2024). The current deadline for completion of Phase 1 discovery is October 21, 2024. *See* Minute Order (Sept. 6, 2024).

Meanwhile, on April 28, 2024, Relators filed their Motion to Proceed to Full Nationwide Discovery ("Motion for Nationwide Discovery"), which is at issue here. ECF No. 150. The motion is accompanied by an opening brief, a "Statement of Facts in Genuine Issue," and supporting exhibits, including an expert declaration. *See* ECF No. 151 and attachments. Plaintiff-Relators seek to proceed to nationwide discovery before the end of Phase 1 discovery, arguing primarily that they have established good cause for the modification because the discovery so far has established both that (1) fact issues exist as to Defendant's "liability for causing false Medicare claims as to Phase 1 patients" and (2) "the record developed in Phase 1 supports further discovery regarding false claims nationwide"; therefore, the "objectives" of Step 4 of the Phased Discovery Order "are satisfied and the purpose of [that order] has been fulfilled." ECF No. 151-2 at 5. They further contend that jump-starting nationwide discovery "will free the parties from having to conduct costly and time-consuming litigation tasks twice—such as depositions and re-depositions of various witnesses—and will allow an earlier disposition of this action." *Id.* at 5–6.

There were disputes about the briefing schedule for the Motion for Nationwide Discovery, including whether it should proceed to full briefing at all. *See* Minute Order (May 6, 2024) (noting the parties had not agreed on a briefing schedule); ECF Nos. 152, 153 & 155 (parties' briefing

regarding the briefing schedule); ECF No. 161 at 4 (transcript of June 26, 2024, hearing before Judge Meriweather). Ultimately, Judge Meriweather allowed full briefing. *See* Minute Order (July 9, 2024); Minute Order (July 29, 2024). On July 29, 2024, the case was reassigned to the undersigned for management of discovery. On August 20, 2024, Defendant filed its opposition to the Motion for Nationwide Discovery, which attaches supporting exhibits, including two expert reports. *See* ECF Nos 174 through 174-39. Briefing was completed on September 3, 2024, when Plaintiff-Relators filed their reply with additional evidence, including an expert report, an expert declaration, and an expert rebuttal to one of Defendant's expert reports, *see* ECF Nos. 178 through 178-46.

## II. DISCUSSION

### A. Legal Standard

The parties both seem to agree that to succeed on their motion, Relators must establish good cause for modifying the Phased Discovery Order. *See, e.g.*, ECF No. 174-2 at 17 (Defendant asserting that "[b]y its own terms, the [Phased Discovery Order] may be altered only for 'good cause' shown"); ECF No. 178-2 at 5 (Relators stating that the modification they seek "would be fully consistent with the [Phased Discovery Order], which contemplates that it may be revised for good cause"). The undersigned concurs that a showing of good cause is required here: Relators are attempting to alter the Phased Discovery Order entered in this case by Judge Chutkan and that order itself requires good cause for such alteration. *See* ECF No. 94-1 at 2 ("[E]ach of the Parties shall remain entitled to seek a change in the plan by further agreement or by Court Order for good cause shown."). But what constitutes good cause in these circumstances?

Defendant argues that the Phased Discovery Order "has characteristics both of a scheduling order, because it determines the order and sequence of case milestones, and of a protective order,

because it limits the scope of discovery to reduce burdens and achieve proportionality." ECF No. 174-2 at 17. It therefore suggests consideration of (1) "the diligence of the party seeking discovery"—an accepted standard for modification of a scheduling order—as well as (2) four factors used to analyze requests to modify protective orders: (a) "the nature of the protective order," (b) "the foreseeability of the modification," (c) "the parties' reliance on the protective order," and (d) "the presence of good cause for the modification." *Id.* at 17–18 (first quoting *United States v. Kellogg Brown & Root Servs., Inc.*, 285 F.R.D. 133, 137 (D.D.C. 2012); and then quoting *United States v. All Assets Held at Bank Julius Baer & Co.*, 312 F.R.D. 16, 19 n.3 (D.D.C. 2015)).

The undersigned agrees with Defendant that the Phased Discovery Order is something like a scheduling order and something like a protective order but does not find the composite standard it suggests appropriate here. The case Defendant cites for the diligence standard, *Kellogg Brown & Root*, addressed a motion to reopen discovery and, understandably, found that "[t]he primary factor in determining whether good cause exists is the diligence of the party seeking discovery before the deadline." 285 F.R.D. at 136. That is, the diligence of the moving party will be of particular importance where a deadline has not been met or allegedly cannot be met and an extension is sought. *See, e.g.*, *United States ex rel. Morsell v. NortonLifeLock, Inc.*, No. 12-cv-800, 2022 WL 278773, at *7 (D.D.C. Jan. 31, 2022) (finding the diligence of the party seeking modification of a scheduling order of limited relevance where "an inability to meet a deadline despite diligence [was] not directly at issue"). That is not the case here. Relators do not seek to extend any deadline; their argument is that the schedule imposed by the Court—specifically, the deadline for the close of Phase 1 discovery and the subsequent contemplated motion practice—is no longer needed because the discovery accomplished so far has made it obsolete. As to the four-

8

factor test for modification of a protective order, Defendant has again cited a case not well suited to its purpose. In *All Assets*, the issue was whether a protective order governing the designation of materials produced in discovery as confidential should be loosened; the undersigned noted that courts "sometimes" apply that four-factor test but found it "not particularly helpful" in evaluating a request to tighten those restrictions. 312 F.R.D. at 18–19, 19 n.3.[5] The issue here is not confidentiality designations (although the parties are fighting over that, as well, *see* ECF No. 179-2), it is the elision of certain steps in the phased discovery plan. And suggesting a multi-factor test to determine good cause in which one of the factors asks whether there is good cause, *see* ECF No. 174-2 at 18 (quoting *All Assets*, 312 F.R.D. at 19 n.3), is singularly unhelpful.

Relators do not propose a specific standard but note that "Black's Law Dictionary defines 'good cause' as 'sufficient grounds to act on'"[6] and advise that what constitutes good cause "depends on the circumstances." ECF No. 178-2 at 7. Those uncontroversial statements offer little practical guidance but work as a starting point. The "circumstances" here are that Relators seek to modify a case management order that they, along with Defendant, jointly proposed to govern the case. Case management and scheduling orders are imposed to ensure the orderly advancement of a case, including identification of the issues to be tried and the progress of discovery. *See, e.g.*, *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1415–16 (11th Cir. 2011) ("[T]he district court is charged with effectuating the speedy and orderly administration of justice.

---

[5] In *All Assets*, the undersigned cited *Flatow v. Islamic Republic of Iran* in noting that "some courts" have applied a four-factor test for modification of a protective order governing confidentiality designations. *See All Assets*, 312 F.R.D. at 19 n.3. *Flatow* itself stated that "one court" had employed that four-factor "structured test to determine if a protective order"—again, a protective order governing confidentiality designations—"should be vacated." 196 F.R.D. 203, 206 n.1 (citing *Bayer AG & Miles, Inc. v. Barr Lab'ys*, 162 F.R.D. 456, 462–63 (S.D.N.Y. 1995)). *Bayer*, too, dealt with confidentiality designations. *See Bayer*, 162 F.R.D. at 462–63.

[6] The current edition of Black's Law Dictionary defines "good cause" as "[a] legally sufficient reason." Cause (2), Black's Law Dictionary (12th ed. 2024). The undersigned sees no material difference between that definition and the one Relators cite.

There is universal acceptance in the federal courts that, in carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." (quoting *United States v. W.R. Grace,* 526 F.3d 499, 508–09 (9th Cir. 2008) (en banc))); *Garza v. Allstate Texas Lloyd's Co.*, 284 F. App'x 110, 113 (5th Cir. 2008) ("[S]cheduling orders are designed to permit discovery and pre-trial matters to be concluded in an orderly process."); *United States v. Philip Morris USA, Inc.*, 219 F.R.D. 198, 200 (D.D.C. 2004) (noting that the "underlying purpose" of a case management order is "to ensure efficient and orderly management of the case"). And in determining whether good cause exists to modify a scheduling or case management order, as well as a protective order, courts have examined whether the request was prompted by a material change in circumstances that was not reasonably foreseeable. *See, e.g.*, *Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 478 (E.D. Cal. 2022) (noting that a party seeking to modify a scheduling order must show that the change is sought due to "the development of matters which could not have been reasonably foreseen or anticipated at the time of the . . . scheduling conference"); *Stephenson v. Wyeth LLC*, No. 04-2312, 2011 WL 4553051, at *2 (D. Kan. Sept. 29, 2011) (allowing modification of a scheduling order where the event motivating the request was "a change in circumstances beyond [the movant's] control"); *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am.*, No. 99-cv-3298, 2004 WL 2009414, at *2 (D.D.C. May 17, 2004) ("'Good cause' implies changed circumstances or new situations . . . ."). That makes sense; even accepting Relators' proffered definition of "good cause" as "sufficient grounds to act on," ECF No. 178-2 at 7, the occurrence of an event reasonably foreseeable at the

time an order was entered should not be considered "good cause" to modify that order, especially where, as here, the party seeking alteration asked the court to enter the order.[7]

Applying those two precepts, the undersigned finds that, in these circumstances, to establish good cause for amending the Phased Discovery Order, Relators must show, at a minimum, two things: (1) that circumstances not reasonably foreseen at the time of the entry of the Phased Discovery Order militate in favor of the requested modification and (2) that the requested modification, if imposed, will result in a process at least as orderly as that included in the Phased Discovery Order. Relators have shown neither of those things.

### B.     Orderliness

Taking the second issue first, Relators propose to upend the Phased Discovery Order's systematic schedule in which Phase 1 discovery is completed, Relators' claims are tested through a summary judgment process consistent with the Federal Rules of Civil Procedure and the Federal Rules of Evidence, and judgment is entered and/or further proceedings are ordered depending on Judge Chutkan's decision on summary judgment. They seek to replace it with a disordered process that will introduce unnecessary complexity into the management of this case.

First, the motion they have brought is one not contemplated by the Federal Rules of Civil Procedure. Posing as a motion to modify the Phased Discovery Order, it is, as a practical matter, the opposition to a motion for summary judgment that has not been filed and—if Relators have

---

[7] The first sentence of Relators' memorandum in support of their Motion for Nationwide Discovery suggests that the Phased Discovery Order was all Defendant's doing, asserting, "*Medtronic's stated purpose for seeking* the [Phased Discovery Order] was to require [Relators] initially to assess the threshold merits of their False Claims Act . . . allegations as to claims arising in a limited time and geographic area and to determine whether those allegations also had genuine substance on a national basis." ECF No. 151-2 at 5 (emphasis added) (citation omitted). But it is undisputed that *both* parties sought entry of that order. *See* ECF No. 93 at 1 ("The Parties have recently concluded negotiations for the adoption of a compromise plan, . . . . Given their agreement to this plan, Plaintiff-Relators Melissa Staggers and Rhonda Kurdelmeyer and Defendant Medtronic Inc. hereby give notice that they each withdraw their earlier, competing plans and jointly request the Court to accept this compromise plan by entering it as an Order of this Court.").

their way—never will be filed. Relators' submissions are shot through with the language of summary judgment. The admitted purpose of the motion is to establish that the evidence shows "a genuine issue of fact as to every element of th[e] nationwide false claims scheme" alleged by Relators. ECF No. 151-2 at 6; *see, e.g.*, *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (noting that, to defeat a "properly supported motion for summary judgment," the non-movant must provide evidence to show that there is a genuine issue of fact for trial); *Jeffries v. Barr*, 965 F.3d 843, 859 (D.C. Cir. 2020) (same); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Forms of the phrases "genuine issue" or "genuine issue of fact" are used repeatedly in their papers. *See, e.g.*, ECF No. 151-2 at 6, 9, 32, 35, 36, 37, 39, 40; ECF No. 178-2 at 5, 8, 9, 10 & n.2. Relators have even filed with their motion a "Statement of Facts in Genuine Issue," ECF No. 151-3, a document required by this Court's Local Civil Rules to accompany an opposition to a summary judgment motion, *see* LCvR 7(h)(1). Indeed, Relators admit that their motion "has attributes similar to a motion for summary judgment." ECF No. 151-3 at 1. Thus, Relators' request to modify the Phased Discovery Order is really an attempt to procure a ruling denying a phantom motion for summary judgment. That is not a circumstance contemplated by the Phased Discovery Order, the Federal Rules of Civil Procedure, or this Court's Local Civil Rules.[8]

Second, and relatedly, the motion improperly attempts to take the summary judgment decision out of the hands of the presiding judge and place it in the hands of a magistrate judge *who*

---

[8] Counsel for Relators appears to recognize this. At the hearing before Judge Meriweather addressing whether briefing should be ordered on the motion at issue, he asserted, "This case is in a bizarre procedural posture at the moment. It's not one that I have ever seen, and I have been around for a while." ECF No. 161 at 5. As explained here, the procedural peculiarities are a function of Relators' own motion.

*does not have the authority to rule on a motion for summary judgment.*[9] This case has been referred to the undersigned for management of discovery; it has not been referred for dispositive motions.[10] In that posture, a magistrate judge does not have the power to conduct proceedings in connection with a motion for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b); LCvR 72.1(b)(1), 72.3. More, if the undersigned were to ignore that Relators' motion is merely disguised as a motion to modify a case management order and rule on its merits—that is, decide whether there is a genuine issue of fact as to Relators' claim—that determination would only complicate matters further. To render such a decision, the undersigned would need to resolve contested substantive issues, including the meaning and effect of NCD 230.18. *See, e.g.*, ECF No. 178-2 at 23 ("[Defendant's expert] Dr. Palega erroneously asserts that the express requirements of NCD 230.18 to document medical necessity for a permanent implant do not apply because the NCD does not include language expressly stating that failure to satisfy its requirements renders the claim 'non-covered.' . . . This is an utter distortion of CMS interpretive guidelines and how they evolved over time[,] . . . [as] Dr. Baer explains in his rebuttal report . . . ."). The side in whose

---

[9] The undersigned is aware that, at the status hearing on June 26, 2024, Judge Meriweather asserted that she had communicated with Judge Chutkan, who "prefer[red] that [Judge Meriweather] resolve [a motion for nationwide discovery] if one is filed." ECF No. 161 at 4. That last clause—"if one is filed"—indicates that Judge Chutkan was unaware of the form that Relators' motion would take and unlikely to expect it would mimic a summary judgment opposition. In any case, the undersigned is resolving the Relators' pending motion, just as Judge Chutkan requested.

[10] Nor would such a referral be advisable. This is a complex case that, after years of being managed by Judge Chutkan and Judge Meriweather, was only recently referred to the undersigned, who has no familiarity with the substantive issues involved. More, as discussed herein, a referral for a report a recommendation on any forthcoming dispositive motions (or on this motion, a dispositive motion camouflaged as a motion to modify a case management order) would be inefficient and could be a source of significant delay. *See* 28 U.S.C. § 636(b)(1)(B), (C) (allowing a district judge to refer dispositive motions to a magistrate judge for a report and recommendation, setting a schedule for objections to the magistrate judge's report and recommendation, and mandating that the district judge apply a *de novo* standard of review); Fed. R. Civ. P. 72(b) (same); LCvR 72.1(b)(1), 72.3 (same). That is, such a referral would result in extensive briefing directed to the magistrate judge, who would then make a recommendation to Judge Chutkan; an objection process that would inevitably provoke further exhaustive briefing; and a decision rendered by the district judge on crucial legal and factual issues after de novo review. That process would significantly delay the presentation of the issues in this complex and long-running case to the district judge, who ultimately must decide them.

favor that decision was rendered could then argue that the rulings—made by the undersigned judge whose only remit in this case is to oversee discovery—were enshrined as the law of the case. *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) ("[T]he law-of-the-case doctrine[] [teaches that] the same issue presented a second time in the same case in the same court should lead to the same result." (emphasis omitted)).  To be sure, the side aggrieved would have some recourse.  It would have a non-frivolous argument that such an order was entered *ultra vires*, or, at the very least, that any review by Judge Chutkan should hew to the standard applicable to a magistrate judge's report and recommendation rather than the "clearly erroneous or contrary to law" standard for review of orders on non-dispositive matters, 28 U.S.C. § 636(b)(1)(A)—although the doctrine of invited error might apply to any such arguments by Relators.  *See, e.g.*, *Wager v. Taylor*, 836 F.2d 596, 599 (D.C. Cir. 1987) ("It has long been settled that . . . a litigant cannot avail himself of an error that he induced the court under review to commit.").  That is hardly the orderly process envisioned by the Phased Discovery Order, which contemplates a magistrate judge overseeing discovery and the district judge resolving dispositive motions concerning the merits.

Third, Relators' strategy has interfered with the efficient resolution of disputes, including evidentiary disputes.  The Phase 1 Scheduling Order, which implements the Phased Discovery Order, contemplates that *Daubert* motions concerning the admissibility of expert reports and testimony will be filed in connection with motions for summary judgment.  *See* ECF No. 128 at 4 ("The Parties will meet and confer to propose a schedule for summary judgment briefing and post–Phase 1 motions, including without limitation objections to expert testimony pursuant to the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as incorporated in Federal Rule of Evidence 702 . . . ."); *see also, e.g.*, *In re Visa Check/MasterMoney*

14

*Antitrust Litig.*, 280 F.3d 124, 132 n.4 (2d Cir. 2001) (noting that *Daubert* motions may "typically" be brought "in association with a motion for summary judgment"), *abrogated on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006); *Cortes-Irizarry v. Corporación Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997) ("The *Daubert* regime can play a role during the summary judgment phase of civil litigation. If proffered expert testimony fails to cross *Daubert*'s threshold for admissibility, a district court may exclude that evidence from consideration when passing upon a motion for summary judgment."); *Carmichael v. West*, No. 12-cv-1969, 2015 WL 10568893, at *7 (D.D.C. Aug. 31, 2015) (quoting *Cortes-Irizarry*).  When Relators filed their motion in April 2024, they had not yet made their initial expert disclosures, but nonetheless "heav[ily] reli[ed]" on a declaration of one of their experts, Dr. Richard Baer.  *See* Minute Order (July 29, 2024); *see also, e.g.*, ECF No. 151-2 at 32–35.  Because of that "heavy reliance," Judge Meriweather postponed the briefing on this motion, requiring Relators to serve Dr. Baer's initial expert report on Defendant so that it could depose him.  Minute Order (July 29, 2024).  Then, in their reply brief, Relators disclosed and relied on a rebuttal report from Dr. Baer and a declaration from a new expert, Dr. Sarah Collins.  *See* ECF No. 180 at 2 (noting that Relators' reply brief relies on "new evidence, including (1) a new declaration from a previously undisclosed expert, Dr. Sarah Collins; [and] (2) a never-before-disclosed 'rebuttal report' from Dr. Richard Baer").  That prompted Defendant to file a contested motion seeking "leave to depose Drs. Collins and Baer about their newly disclosed opinions, and to file a sur-reply."  *Id.* at 10.  The disorganized briefing on this motion is evidence that Relators' proposal is a source of disruption.

   In short, Relators have not demonstrated that the requested modification would result in a process at least as orderly as that included in the Phased Discovery Order.  To the contrary, it flouts

the applicable rules and would needlessly inject questions as to judicial authority and procedural fairness to this case.

### C. Changed Circumstances

Nor have Relators shown that circumstances not reasonably foreseeable at the time of the entry of the Phased Discovery Order favor the requested modification. Relators insist that the Phased Discovery Order should be modified because the evidence it has adduced during Phase 1 discovery has shown that there is "a genuine issue of fact as to every element of th[e] nationwide false claims scheme" they have alleged. ECF No. 151-2 at 6. But surely that was always Relators' reason to engage in Phase 1 discovery—to uncover evidence that would allow them to defeat Defendant's contemplated summary judgment motion and proceed to nationwide discovery. The fact that Phase 1 discovery has yielded evidence Relators believe meets that goal—even prior to the close of the Phase 1 period—is hardly a circumstance that would not have been within reasonable contemplation when they sought entry of the Phased Discovery Order. Relators also contend that if the Phased Discovery Order is not modified as they suggest, the parties will have to "engage in costly depositions of numerous fact witnesses under the restrictions of Phase 1, or to sponsor reports of experts or submit them to depositions, when many witnesses are likely to be re-deposed in the next phase." *Id.* at 40. Although that may be a drawback of this case's phased discovery plan, it was a drawback that must have been understood at the time the plan was proposed and the Phased Discovery Order was entered, because it seems inherent in that plan. Similarly, the complications attendant on the briefing and resolution of motions for summary judgment, *see id.* at 40 (seeking to avoid "time-consuming Phase 1 summary judgment practice"); ECF No. 178-2 at 29 (complaining of "months of briefing summary judgment and any *Daubert*

issues, oral argument, and consideration and decision"), should not be a surprise to Relators—summary judgment motion practice is baked into the Phased Discovery Order.

It is undeniable that this case has been pending for a long time. Indeed, it had already been pending for over six years when the Phased Discovery Order was entered. But whatever Relators assert about having "no real choice but to accede to" proposing the Phased Discovery Order, ECF No. 173-1 at 3, it is undisputable that they did agree to that plan, even at that late date. Discovery may not have proceeded as speedily as Relators would have liked—a glance at the docket shows that this has been a contentious case[11]—but although the Phase 1 Discovery Order (which appears to be the first scheduling order entered in this case) has been extended somewhat, those extensions have not been lengthy. For example, the original deadline for fact discovery was June 7, 2024. *See* ECF No. 128 at 2. It has now been extended—upon a request by Relators consented to in part by Defendant, *see* ECF No. 173-1 (Relators requesting a 60-day extension of the discovery deadline); ECF No. 176 at 2 (Defendant consenting to a 45-day extension)—by a few months to October 21, 2024. Minute Order (Sept. 6, 2024). Not optimal, perhaps, but hardly out of the ordinary for a complex case. More, Relators' worries about delay are undercut by the fact that they recently sought to hold all discovery in abeyance pending a decision on motion at issue here. *See* ECF No. 173-1 at 1.

---

[11] Conforming to the obviously contentious manner in which this action has been litigated so far, the parties take turns sniping at each other about delay, with Defendant asserting that Relators have not been diligent in engaging in discovery, *see* ECF No. 174-2 at 18–20; ECF No. 176 at 4–6, and Relators accusing Defendant of "engineer[ing]" delay "to its benefit," ECF No. 151-2 at 39; *see also* ECF No. 177 at 1. The undersigned has only recently been assigned this case, and parsing through those accusations would be a waste of judicial resources. The undersigned merely notes that the record does not appear to reflect any order entered by Judge Chutkan or Judge Meriweather suggesting that either party has unreasonably delayed these proceedings. Going forward, the parties are expected to step up their efforts to comply with Rule 1 of the Federal Rules of Civil Procedure to secure the "just, speedy, and inexpensive determination of [this] action."

Relators may regret the consequences of the Phased Discovery Order, but those regrets do not constitute uncontemplated material changes in the circumstances that would support good cause to modify that order.

*     *     *     *     *

A final note. "[S]ummary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986)). As should be clear from this discussion, Relators' motion is an attempt to jettison the process to which the parties agreed and, under the guise of a ruling modifying that case management order, secure a decision that effectively finds—prior to the close of Phase 1 discovery—that any motion for summary judgment that Defendant could file is already doomed to failure. Fairness dictates, however, that Defendant have the opportunity to complete Phase 1 discovery and mount whatever arguments it can marshal in its favor on a complete record, which Relators can then oppose. Relators' proposal is an attempt to allow a non-movant to control the summary judgment process, setting the terms of the argument and getting the last word. The undersigned finds it unwarranted and unfair.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Relators' Motion for Nationwide Discovery, ECF No. 150, is **DENIED**.

It is further **ORDERED** that Relators' Motion to Hold Discovery in Abeyance Pending a Ruling on Their Motion to Proceed to Full Nationwide Discovery, ECF No. 173, which seeks either a stay of discovery pending resolution of the motion addressed in the Memorandum Opinion and Order or a 60-day extension of discovery deadlines, is **DENIED AS MOOT**. The undersigned has now resolved the Motion for Nationwide Discovery and has already ordered a 45-day

extension of discovery deadlines. Any further requests as to Phase 1 discovery deadlines can be raised later, at or after the upcoming status conference in this case.

It is further **ORDERED** that Defendant's Motion for Leave to File a Sur-Reply, ECF No. 180, is **DENIED AS MOOT**.

**SO ORDERED.**

Date:   October 15, 2024

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE